# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DOUGLAS D. MEYER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-16-1116-R |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Douglas Meyer (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's (Commissioner) final decision that he was not "disabled" under the terms of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). United States District Judge David L. Russell has referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3) and Fed. R. Civ. P. 72(b). Doc. 3.

After a careful review of the record (AR), the parties' briefs, and the relevant authority, the undersigned recommends the entry of judgment affirming the Commissioner's final decision. *See* 42 U.S.C. § 405(g).

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

## C. Relevant findings.

### 1. Administrative Law Judge (ALJ) findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis in order to decide whether Plaintiff was disabled during the relevant time period. AR 20-26; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). Specifically, the ALJ found Plaintiff:

(1) was severely impaired by degenerative disc disease;

(2) had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(3) had the residual functional capacity[1] (RFC) for light work where, first, he would lift/carry/push/pull no more than twenty pounds occasionally and ten pounds frequently, second, would sit for a total of no more than a total of three to six hours in an eight-hour day, third, would stand for no more than two hours in an eight-hour day, fourth, would walk for no more than a total of three to six hours in an eight-hour day, fifth, could avoid hazards such as moving machinery, and sixth, would never climb ropes or ladders;

(4) was able to perform certain past relevant work; and so,

(5) had not been under a disability as defined by the Social Security Act since his alleged onset of disability on August 14, 2012.

---

[1] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

AR 20-26.

### 2. Appeals Council action.

The Social Security Administration's Appeals Council found no reason to review that decision, so the ALJ's decision is the Commissioner's final decision in this case. *Id.* at 1-7. *See Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted).

**B. Issue for judicial review.**

Plaintiff contends "[t]he [ALJ] failed to evaluate [Plaintiff's] subjective complaints under the correct legal procedures." Doc. 15, at 11.

**C. Analysis.**

Plaintiff begins his challenge to the legal sufficiency of the ALJ's evaluation of his credibility by noting what an ALJ is required by law and regulation to consider, evaluate, weigh, link, and document in making a credibility determination. *Id.* at 11-13. He does not, however, point to any of these specific legal requirements and ascribe any failure on the ALJ's part to adhere to it in this case. *Id.*

Instead, Plaintiff first "asserts the ALJ failed to consider the complaints and limitations regarding his neck when determining his claim . . . ." *Id.* at 13. He refers to his administrative hearing testimony regarding his limited range of neck motion, specifically to his statement that "he would be unable to hold a downward facing position for two or four hours continuously . . . ." *Id.* He contends "[t]he medical evidence supports the neck limitations [he] reported," including the consultative examiner's findings of limitations "in extension, flexion, and left and right rotation . . . ." *Id.* He faults the ALJ for not "explain[ing] why his RFC assessment did not include postural limitations to account for these limitations . . . ." *Id.* Nonetheless, Plaintiff identifies no

5

specific postural limitation that, in his view, the ALJ *should* have imposed, given the record before him. *Id.* Correspondingly, he does not address—or acknowledge—the postural limitation the ALJ *did* include in the RFC—that he must "never climb ropes or ladders." AR 23.[2] Likewise, Plaintiff ignores the *significant* restriction the ALJ imposed due to the effects of his degenerative disc disease: a limitation to *light* work.

Next, Plaintiff maintains "the evidence from before [his] alleged onset date was relevant to the history of his neck impairment" and cites authority holding that an ALJ should consider such evidence. Doc. 15, at 13. He concedes, though, that the ALJ did just that, *id.* at 13-14, but then claims error because the ALJ "failed to consider this evidence in the context presented by [Plaintiff's] attorney during the hearing . . . ." *Id.* at 14. He provides no support, however, for the proposition that the ALJ had to consider this evidence in any particular context and, in any event, only speculates about the context in which the ALJ did (admittedly) consider the pre-onset-date evidence. *Id.* at 13-14.

---

[2] Notably, Plaintiff's surgeon's "only restriction [was] working overhead or above chest" when he released Plaintiff to work with a two-level cervicial fusion. AR 483; *see also id.* at 37.

Plaintiff further claims his "subjective complaints concerning limitations in his neck," presumably, that these limitations are disabling (or preclude the performance of even light work), are supported by his medical history and by "the range of motion findings" documented by Blake D. Christensen, D.O., in the course of Plaintiff's consultative examination. *Id.* at 14. He does not explain, however, in what manner the degree of flexion, rotation, and extension of his cervical spine as measured by Dr. Christensen, *see* AR 385, supports his claim of *disabling* neck limitations. Doc. 15, at 14. As Plaintiff informed Dr. Christensen, he had undergone "an anterior cervical *fusion*." AR 380 (emphasis added). The same holds true as to Plaintiff's related claim that "the ALJ misstates the range of motion findings of Dr. Christensen [by] stating the range of motion study of [Plaintiff's] cervical spine did not reveal any significant limitations . . . ." Doc. 15, at 14. Whether limitations in a *fused* cervical spine are significant is necessarily relative, and Plaintiff does not direct the court to any medical evidence showing that for his particular fusion, the range of motion limitations measured by Dr. Christensen are—contrary to the ALJ's conclusion—"significant." AR 24.

Plaintiff then claims the ALJ "mischaracterized [his] hearing testimony regarding medication side effects," pointing to his administrative hearing testimony that Oxycontin, his pain medication, makes him drowsy. Doc. 15, at

7

14. He is correct. The ALJ inaccurately noted that Plaintiff "did not allege any side effects from his medications at the hearing." AR 25. But the ALJ's misstatement does not warrant reversal. The administrative hearing transcript shows that the ALJ specifically questioned Plaintiff about the side effects of his medication, and Plaintiff testified that "it . . . will make you drowsy for sure" and "[y]ou wouldn't want to be driving a vehicle or really operating any kind of machines, equipment." *Id.* at 45. Then in his hearing decision, the ALJ—notwithstanding his inaccurate statement that Plaintiff "did not allege any side effects from his medications at the hearing," *id.* at 25,— imposed an RFC restriction to address the stated side effects: Plaintiff "should avoid hazards such as moving machinery." *Id.* at 23, 53. The ALJ acknowledged Plaintiff's medication side effects,[3] accounting for them in his RFC assessment, and his mistake in decision writing does not undermine his credibility findings.

---

[3]  Plaintiff also suggests he identified an inability to concentrate as a second medication side effect when he testified at his administrative hearing. Doc. 15, at 14. According to the transcript, though, he did not mention this when the ALJ specifically asked him to describe his side effects. *See* AR 45. Even when his counsel then asked if his medication, in addition to "mak[ing him] groggy," "affect[ed his] ability to concentrate and perform tasks," or "impede[d his] ability to sit and perform even simple tasks on a routine, consistent basis," *id.* at 50, his responses were, at best, equivocal: "[t]o an extent" and "depending on what that was and for how - - length of time, that's for sure." *Id.*

8

Plaintiff also challenges what he contends are other "mischaracterization[s] of [his] statements in the ALJ's decision." Doc. 15, at 14. Specifically, he faults the ALJ for discounting his claims of *disabling* symptoms because, in part, those claims conflicted with his stated ability "to prepare meals, feed and water the pets, drive a car[,] go shopping . . ., manage funds [and] watch[] TV." AR 25. But as the ALJ recited, he must consider the nature of a claimant's daily activities when assessing the believability of that claimant's alleged disabling limitations. *Id.* at 24-25 (citing SSR 96-7p, at *3[4]). Plaintiff also complains the ALJ failed to mention that Plaintiff only prepares meals once a month and that he no longer has a driver's license. Doc. 15, at 14-15. Nonetheless, "[a]lthough the record also contains evidence that [Plaintiff's] daily activities are more limited, the ALJ is in the best position to resolve such conflicts in the evidence . . . ." *Thomas v. Berryhill*, No. 16-1353, 2017 WL 1359827, at *2 (10th Cir. Apr. 13, 2017).

Plaintiff has failed to establish reversible error. "Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked

---

[4] SSR 16-3p effectively superseded this Ruling on March 16, 2016, after the ALJ entered his decision in this matter.

9

to substantial evidence and not just a conclusion in the guise of findings." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (citation, internal brackets, and internal quotation marks omitted). An ALJ's credibility findings reflect his consideration of Plaintiff's allegations of disabling symptoms in order to "decide whether he believe[d them]." *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) (citation omitted). In making this determination, an ALJ should consider factors such as

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Wilson v. Astrue*, 602 F.3d 1136, 1145 (10th Cir. 2010) (citation and quotation marks omitted). But, as long as the ALJ provides the specific evidence he has relied on in assessing a claimant's credibility, "a formalistic factor-by-factor recitation of the evidence" is not required in the Tenth Circuit. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Here, the ALJ properly and sufficiently explained the required link between the evidence of record and his finding that Plaintiff's allegations of *disabling* pain and other limitations were not entirely credible. "[H]is approach performed the essential function of a credibility analysis by

indicating to what extent he credited what [Plaintiff] said when determining the limiting effect of [Plaintiff's] symptoms." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1170 (10th Cir. 2012).

The ALJ's determination—that Plaintiff's subjective complaints are not entirely believable—is supported by substantial evidence and is free from legal error.

### III. Recommendation and notice of right to object.

The undersigned recommends the entry of judgment affirming the Commissioner's final decision.

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of Court by July 10, 2017, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make a timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 19th day of June, 2017.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE